# 22-10265

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**COREY DEYON DUFFEY,**
**JARVIS DUPREE ROSS,**
Defendant-Appellants

On Appeal from the United States District Court
For the Northern District of Texas, Dallas Division
District Court No. 3:08-CR-167-B

**APPELLEE'S UNOPPOSED MOTION TO VACATE AND REMAND**

Due to a change in the litigating position of the Department of Justice, the government asks this Court to vacate the appellants' sentences and remand this matter to the district court for resentencing. For the reasons described below, the government now asserts that Section 403 of the First Step Act should apply in cases like this one and that the district court should have applied a five-year mandatory minimum to **all** of the appellants' remaining convictions under 18 U.S.C. § 924(c).

## 1.    Procedural history[1]

In 2009, a jury convicted Duffey, Ross, and three other coconspirators of multiple counts of conspiracy to commit bank robbery, bank robbery, accompanying firearms offenses under 18 U.S.C. § 924(c), and other offenses. (ROA.377-422.)  Several of the Section 924(c) convictions were premised on conspiracy to commit bank robbery.  After the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), Duffey and Ross received authorization from this Court to file successive 28 U.S.C. § 2255 motions. (ROA.640-49, 5190-92.)  The government conceded the *Davis* error, and the parties filed agreed motions to vacate the invalid conspiracy-premised Section 924(c) convictions.  (ROA.650-53, 5210-12.)  The district court vacated those convictions, vacated the remaining sentences, and ordered resentencing. (ROA.652-53, 5210-12.)

Following the vacatur, Duffey and Ross each had five remaining Section 924(c) convictions.  At sentencing and consistent with Department of Justice policy at the time, the government took the position that Amendment 403 of the First Step Act should not be applied.  (ROA.4585-92, 5442-5444.)  The

---

[1] A more detailed explanation of the underlying facts and procedural history can be found in this Court's earlier opinions, *United States v. Duffey*, 456 F. App'x 434, 445 (5th Cir. 2012), and *United States v. Ross*, 582 F. App'x 528 (5th Cir. 2014).

district court agreed.  (ROA.3800, 5316.)  On March 14, 2022, the district court sentenced Duffey to an aggregate term of imprisonment of 1,560 months, comprised of 300 months collectively on the underlying offenses, 60 months for the first Section 924(c) conviction, and 300 months for each of the four subsequent Section 924(c) convictions. (ROA.683-90.)  On March 24, 2022, the court sentenced Ross to an aggregate term of imprisonment of 1,625 months, comprised of 365 months on the underlying offenses, 60 months on his first Section 924(c) conviction, and 300 months on each of the four subsequent Section 924(c) convictions.  (ROA.5218-5225.)  Duffey and Ross timely appealed.

**2.    Discussion**

**Section 403 applies at resentencing following the vacatur of a defendant's pre-Act Section 924(c) sentence.**

Following the enactment of the First Step Act, the government took the view that the amendment set forth in Section 403 of the Act did not apply to a defendant who was sentenced prior to the Act's enactment, even if that defendant's Section 924(c) sentence was subsequently vacated and he obtained a resentencing.  Several courts of appeals that have considered the issue, however, determined that Section 403 and the identically worded retroactivity provision in Section 401 of the Act apply to a defendant whose pre-Act sentence was vacated before the Act's enactment and who remained

3

unsentenced on the date of enactment. *See United States v. Henry*, 983 F.3d 214, 222-24 (6th Cir. 2020) (Section 403); *United States v. Uriarte*, 975 F.3d 596, 601-05 (7th Cir. 2020) (en banc) (Section 403); *United States v. Bethany*, 975 F.3d 642, 649-50 (7th Cir. 2020) (Section 401). And some of the courts of appeals that have considered the question further determined that Sections 401 and 403 also apply when a defendant's pre-Act sentence is vacated after the Act's enactment. *See United States v. Mitchell*, 38 F.4th 382, 386-89 (3d Cir. 2022); *United States v. Merrell*, 37 F.4th 571, 575-78 (9th Cir. 2022); *see also United States v. Bethea*, 841 F. App'x 544, 548-53 (4th Cir. 2021) (unpublished opinion). *But see United States v. Jackson*, 995 F.3d 522, 525-26 (6th Cir. 2021) (holding that Section 403 does not apply to post-enactment vacaturs).

Following those decisions, the government reexamined its position and has now concluded that the best reading of Section 403, considered in light of the statutory text, context, and purpose, is that the amended statutory penalties set forth in Section 403 apply at any sentencing on Section 924(c) counts that takes place after the Act's effective date. Accordingly, a defendant on whom a sentence is imposed for a Section 924(c) offense after that date—even at a resentencing—should receive the benefit of the Act's reduced statutory minimum sentences.

**A.** **Congress enacted the First Step Act to reduce statutory minimum sentences.**

The First Step Act, which passed by wide margins in both the House of Representatives and the Senate, was enacted with support from an "extraordinary political coalition." 164 Cong. Rec. S7,645 (daily ed. Dec. 17, 2018) (Sen. Durbin). Support for the Act was "not just bipartisan; it [was] nearly nonpartisan." 164 Cong. Rec. S7,749 (daily ed. Dec. 18, 2018) (Sen. Leahy).

Although the Act contained a number of significant criminal justice reforms, one of the Act's "most important reforms" was its "changes to mandatory minimum[]" sentences. 164 Cong. Rec. S7,748 (daily ed. Dec. 18, 2018) (Sen. Klobuchar); *see also id.* at S7,774 (Sen. Feinstein) ("Most importantly, in my view, [the Act] reduces some of the harshest mandatory minimum sentences."). Having recognized "unfairness in how" certain "mandatory minimum sentences are sometimes applied," Congress intended the Act to "address[] overly harsh and expensive mandatory minimums." 164 Cong. Rec. S7,649 (daily ed. Dec. 17, 2018) (Sen. Grassley). The Act sought to remedy, to some extent, "the fundamental unfairness of a system that imposes lengthy imprisonment that is not based on the facts and circumstances of each offender and each case." 164 Cong. Rec. H10,362 (daily ed. Dec. 20, 2018) (Rep. Nadler); *see also*, *e.g.*, 164. Cong. Rec. S7,749 (daily ed. Dec. 18,

2018) (Sen. Leahy) ("The First Step Act takes modest but important steps to remedy some of the most troubling injustices within our sentencing laws and our prison system," and "recogni[zes] that one-size-fits all sentencing is neither just nor effective."); *see generally* First Step Act, tit. IV, §§ 401-404, 132 Stat. 5220-22 (entitled "Sentencing Reform").

As directly relevant here, Section 403 of the Act significantly reduced the statutory minimum penalties to be applied for violations of 18 U.S.C. § 924(c). Before the First Step Act, that Section provided for a minimum consecutive sentence of 25 years imprisonment in the case of a "second or subsequent conviction" under Section 924(c), including when that second or subsequent conviction was obtained in the same proceeding as the defendant's first conviction. 18 U.S.C. § 924(c)(1)(C)(i) (2006); *see Deal v. United States*, 508 U.S. 129 (1993). In Section 403, however, Congress amended the statute to provide for a minimum consecutive sentence of 25 years of imprisonment only in the case of a "violation of [Section 924(c)] that occurs after a prior conviction under [Section 924(c)] has become final." First Step Act § 403(a), 132 Stat. 5221-5222. Congress therefore "sought to ensure that the stacking applied only to defendants who were truly recidivists." *Henry*, 983 F.3d at 218; *see* 164 Cong. Rec. S7,774 (daily ed. Dec. 18, 2018) (Sen. Cardin) (provision

"helps ensure that sentencing enhancements for repeat offenses apply only to true repeat offenders").

In enacting Section 403, Congress specifically departed from the default principle that a statute that reduces penalties applies only to offenses that are committed after its enactment, 1 U.S.C. § 109, by expressly providing that Section 403 applies to some pre-Act offenders.  Section 403(b) states:

> APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

First Step Act § 403(b), 132 Stat. 5222; *see also id.* § 401(b), 132 Stat. 5220-5221 (identical provision for Section 401 of the Act, which reduces the statutory-minimum penalties associated with certain recidivist drug-trafficking offenses and narrows the kinds of predicate convictions that trigger those penalties).

**B.    Section 403's text, context, and purpose confirm that it applies at a resentencing.**

The text, context, and purpose of Section 403(b) reflect that Congress struck a balance in the retroactivity provision:  Although Congress did not intend Section 403 to disturb the finality of legally valid Section 924(c) sentences, Congress intended the reduced statutory minimum penalties to apply at future sentencings, including resentencings.  Congress had little reason to impose a now-repealed sentencing scheme, considered by some "overly

harsh" and "unfair[]," 164 Cong. Rec. S7,649, H10,362, on a defendant who is resentenced for Section 924(c) counts on a fresh slate, and it did not require that unjust result.

In Section 403(b), Congress balanced two competing interests: finality and fairness. Specifically, Congress declined to upset the finality of criminal sentences by providing resentencing to thousands of offenders who would not otherwise be entitled to a new sentencing hearing. But the retroactivity provision ensures fairness where that finality concern is absent by providing that pre-Act offenders should not be subject to statutory minimum sentences that Congress had determined to be unjust when they do not already have a Section 924(c) sentence. A defendant who is going to undergo a fresh resentencing, because his Section 924(c) sentence has been vacated, falls within the category of individuals entitled to benefit from that retroactivity provision.

Section 403 states that its amendments apply "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b), 132 Stat. 5222. Section 403's amendments accordingly apply to Section 924(c) offenses "committed before the date of" enactment in at least some circumstances.

Section 403(a)'s reference to "a sentence," standing alone, is ambiguous as to whether it refers to the historical fact of the imposition of a sentence, regardless of its validity, or whether it refers to the imposition of a sentence with continuing validity. But additional textual considerations, context, and purpose resolve the ambiguity and establish that Congress was referring to a valid sentence.

A "sentence" is "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty," *Black's Law Dictionary* 1569 (10th ed.), which is "imposed" when it is pronounced by the district court. *See*, *e.g.*, 18 U.S.C. § 3553 (procedures for "[i]mposition of a sentence"); Fed. R. Crim. P. 32(b)(1) (requiring a court to "impose sentence without unnecessary delay"); *United States v. Gomez*, 960 F.3d 173, 177 (5th Cir. 2020) (holding that, for purposes of Section 403, "[a] sentence is 'imposed' when the district court pronounces it, not when the defendant exhausts his appeals"); *see also*, *e.g.*, *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) (explaining that, for purposes of sentencing, "imposition and finality are two different concepts"), *cert. denied*, 141 S. Ct. 2776 (2021).

Whether "a sentence" includes a subsequently vacated sentence—or, put otherwise, whether a particular reference to "a sentence" refers to the historical fact of its imposition or its continuing validity—depends on surrounding text

and other context.  And, as multiple courts have found, the text and context here illustrate that Congress was referring to a sentence with continuing validity.

To begin, the plain meaning of "a sentence" can account for subsequent events that identify the sentence as invalid, rather than requiring an exclusive focus on the historical fact that a judgment had once been formally pronounced, if other statutory cues indicate that is the relevant meaning of the term.  It would be odd to say that "a sentence" has been "imposed" on a defendant as of the date of the enactment of the First Step Act if that sentence was vacated before the enactment date, leaving that defendant identically situated for all practical purposes to one who never had a sentencing hearing at all.  For that reason, the courts of appeals have uniformly held that where a court pronounced an initial sentence, but that sentence was subsequently vacated before the First Step Act was enacted, "a sentence for the offense has not been imposed as of [the] date of enactment."  *Henry*, 983 F.3d at 222-24 (Section 403); *Uriarte*, 975 F.3d at 601-05 (Section 403); *Bethany*, 975 F.3d at 649-50 (Section 401).  Although the example of pre-Act vacatur is a particularly stark one, those holdings reflect that the historical fact that a sentence had, at one point, been imposed, is not dispositive.

Here, two features of the statutory text suggest that, as used in Section 403(b), "a sentence" does not include subsequently vacated sentences. First, Congress used the present-perfect tense—"has . . . been imposed." The use of the present-perfect tense indicates that Congress was not focused on the single point in time of the pronouncement of the judgment, but rather on the sentence's continuing validity. The present-perfect tense signifies an "act, state, or condition," that "is *now* completed *or continues up to the present*." *The Chicago Manual of Style* ¶ 5.132 (17th ed. 2017) (emphasis added). That is, it focuses on the state of affairs "now" or in "the present" rather than at some earlier point at time. *Ibid.* For that reason, it would not be coherent to say, "a sentence has been imposed as of 2021, but it has since been vacated." Instead, an ordinary speaker of English would say "a sentence *had* been imposed as of 2021, but it has since been vacated."[2] For the same reason, Section 403(b)'s use of "has" rather than "had" is a powerful textual indicator that continuing

---

[2] As this example illustrates, the statute's reference to whether a sentence has been imposed "as of" the date of the First Step Act's enactment does not change the analysis. The "as of" clause simply serves to identify the date after which the Section's amendments should begin to be applied at sentencings. A defendant sentenced under the prior scheme the day before the First Step Act cannot claim error in his sentencing on that basis; a defendant sentenced under that scheme the day after the First Step Act can. The present-perfect tense, however, refers to the state of events in *the present*, not an earlier specified date. If Congress intended to make application of Section 403 turn on the validity of the sentence on the date of enactment (a test that would not serve any meaningful purpose from the perspective of finality, *see infra*), it would have asked if a sentence "*had* not been imposed as of" the enactment date.

validity, not historical fact, is the touchstone—that Congress was intending to capture sentences that both had been pronounced as of the enactment date *and* that continued into the present.

Second, in describing the triggering event for determining the retroactive application of the First Step Act—the imposition of "a sentence"—Congress used the neutral article "a" instead of the more expansive word "any." That drafting choice has particular significance because Congress employed the more capacious term "any" earlier in the same sentence of Section 403(b) when referring to the "offense[s]" to which the provision applies. First Step Act § 403(b), 132 Stat. 5222 ("any offense . . . committed before the date of enactment of this Act"). "Congress' use of the word 'any' suggests an intent to use that term expansively." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) (brackets and quotations omitted)). Congress's choice to use an expansive term in defining the universe of offenses subject to the retroactivity provision and a neutral term in setting out the limitation on its application underscores that the carveout should not be read broadly. The "presum[ption] that Congress acts intentionally and purposely" in "includ[ing] particular language in one section of [the] statute but omit[ting] it in another section of the same Act," *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted), counsels strongly against reading "a sentence" to mean "any sentence" in this

context.  As the Seventh and Ninth Circuit observed:  "Had Congress intended the phrase 'a sentence' to convey a very broad meaning, it could have used the word 'any,' as it did earlier in the same sentence."  *Merrell*, 37 F.4th at 575-76 (quoting *Uriarte*, 975 F.3d at 604).[3]

Statutory context and purpose further indicate that Section 403(b) focuses on the continuing validity, and not the historical fact, of a sentence. Section 403(b) is a retroactivity provision, not a provision governing substantive conduct.  Accordingly, the historical fact that a sentence was previously imposed has little relevance—in sharp contrast to contexts where Congress describes a class of persons (*e.g.*, felons or individuals who were deported) prohibited from certain actions based on a triggering event and regardless of that event's legal validity.  And in crafting the retroactivity provision, Congress struck a balance between disturbing the finality of sentences and giving effect to what it has come to believe is a more just sentencing regime.  *Calderon v. Thompson*, 523 U.S. 538, 555 (1998) (describing the "essential" importance of finality in the criminal law); *see United States v.*

---

[3] The use of the indefinite article "a" in describing "a sentence" further accords with Congress's approach in not making the First Step Act itself a basis to require resentencing. If Congress had referred to "the sentence" instead of "a sentence," that drafting choice could have suggested that a sentence that has not become final on appeal does not qualify, potentially requiring resentencing proceedings for all offenders whose appeals were pending at the time of the First Step Act's enactment.  The use of the indefinite article "a" in this context suggests a middle-ground position between a sentence that is final in that sense and any sentence whatsoever.

*Frady*, 456 U.S. 152, 166 (1982) ("[T]he Federal Government, no less than the States, has an interest in the finality of its criminal judgments."). That balance forbids reopening valid Section 924(c) sentences on the basis of the First Step Act alone but authorizes application of the new sentencing scheme where a defendant is receiving a fresh Section 924(c) sentence anyway and therefore no finality concerns exist.

A comparison to the finality-protective language of 18 U.S.C. § 3582(c) illustrates the distinction between reopening a Section 924(c) sentence that otherwise continues to be valid, which Congress prohibited, and applying the corrected scheme to a defendant who is receiving a fresh sentencing on his Section 924(c) count anyway, which Congress allowed. Section 3582(c) provides that (with limited exceptions) a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Pepper v. United States*, 562 U.S. 476, 502 n.14 (2011). That provision limits a district court's ability to reopen the sentence but does not circumscribe the district court's authority to deviate from the previous sentence at a resentencing— rather, that authority remains plenary. *See Pepper*, 562 U.S. at 507. And the language Congress used in defining the universe of offenses excluded from the retroactive application of Section 403—"if a sentence for the offense *has* not *been imposed*" as of the enactment date, First Step Act § 403, 132 Stat. 5222

14

(emphasis added)—mirrors the Section 3582(c) prohibition on modifying a term of imprisonment "once it *has been imposed*," 18 U.S.C. § 3582(c).[4]  Given that broader statutory context, Congress's decision to phrase the retroactivity provision in terms of a whether a sentence "has . . . been imposed" in Section 403 is a powerful indicator that it intended to avoid reopening valid Section 924(c) sentences, but not to distinguish among offenders based on the historical fact of a subsequently invalidated Section 924(c) sentence.

Requiring new sentencing proceedings for all pre-Act offenders at which the statutory minimum terms of imprisonment are modified would require reopening final judgments.  *See* 18 U.S.C. § 3582(b) (a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment").  By limiting the universe of offenses eligible for Section 403 to situations where "a sentence for the [Section 924(c)] offense has not been imposed," Congress made clear that reopening valid Section 924(c) sentences is not required. Courts of appeals have uniformly interpreted Section 403(b) accordingly,

---

[4] Similarly, in Section 404 of the First Step Act, which permits district courts to reopen sentences to allow offenders to benefit from the Fair Sentencing Act of 2010, Congress provided that a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence." First Step Act § 404(b), 132 Stat. 5222.  That neighboring provision again illustrates Congress's focus on the imposition of a sentence as a measure of whether the sentence needs to be reopened, and further illustrates that by adopting the inverse rule in Section 403, Congress was ensuring that valid sentences could not be reopened, not that Section 403 should not apply at resentencings.

holding that Section 403 does not apply in cases that remained pending on direct appeal at the time the Act was enacted. *See United States v. Gomez*, 960 F.3d 173, 177 (5th Cir. 2020); *United States v. Eldridge*, 2 F.4th 27, 40-41 (2d Cir. 2021), *vacated on other grounds*, 142 S. Ct. 2863 (2022); *Henry*, 983 F.3d at 220 (collecting cases).

But unlike the existence of a sentence with continuing validity, the historical fact that a sentence was once imposed bears no relationship to finality. From the perspective of finality, there is no difference between: (1) an offender who was convicted of Section 924(c) offenses before the First Step Act but who has not had an initial sentencing, who indisputably may benefit from the new sentencing scheme under Section 403(b); (2) an offender who had an initial sentencing but obtained vacatur of the Section 924(c) sentences before the enactment of the First Step Act; and (3) an offender who obtained vacatur of the Section 924(c) sentences after the enactment of the First Step Act. None of these offenders has an operative Section 924(c) sentence, and a court needs to undertake a sentencing proceeding for each. Imposing the First Step Act's penalties, in lieu of prior penalties that Congress has determined are unnecessary, adds no burden on the sentencing court. Interpreting "a sentence" in Section 403(b) to refer to a legally valid or operative Section 924(c) sentence tracks Congress's tradeoff between broad substantive

application and finality.  That interpretation identifies offenders who should benefit from the new statutory penalties, which Congress viewed as the just ones for defendants who are not already serving Section 924(c) sentences under the old scheme, without disturbing an otherwise operative Section 924(c) sentence and without imposing on courts the administrative burdens of a new sentencing proceeding.  The historical fact of a prior sentencing proceeding, which a vacatur does not erase, may itself be relevant for certain purposes.  *See* 18 U.S.C. § 3742(g)(1) (providing for application of sentencing guidelines "that were in effect on the date of the previous sentencing").  But it provides no compelling reason to reproduce the effects of a now-discredited sentencing scheme when resentencing a defendant on an otherwise-clean slate for his Section 924(c) offenses.

Accordingly, based on text, context, and purpose, Section 403(b) is best read as adopting a middle ground between the default regime of imposing more lenient penalties only on post-enactment offenders, 1 U.S.C. § 109, and allowing the reopening of final judgments with the administrative and finality costs that entails, *see, e.g.*, First Step Act § 404(b), 132 Stat. 5222 (permitting district courts to reopen valid drug-trafficking sentences and reduce those sentences pursuant to provisions of the Fair Sentencing Act of 2010).  To be sure, Congress could have made it even clearer that offenders like the

defendants here are included by saying that the First Step Act will apply "at any future resentencing on Section 924(c) offenses." But if Congress had wanted to exclude offenders like the appellants, it could have also spoken more clearly, making the application of the Act to pre-Act offenders turn on whether "'an *original* sentence' or 'an *initial* sentence,'" was imposed. *Uriarte*, 975 F.3d at 604; *see* 10 U.S.C. § 863 (prohibiting imposition of any "sentence in excess of or more severe than the original sentence" in certain circumstances); *id.* § 950e (similar); 18 U.S.C. § 4214 (1982 ed.) (providing for a parolee's referral to a treatment center "for all or part of the remainder of his original sentence" upon a parole violation). Applying the First Step Act at resentencing proceedings for Section 924(c) offenses respects the balance Congress struck in the retroactivity provision.

## 3.  Conclusion

In light of the foregoing, the Court should vacate the appellants' sentences and remand to the district court for resentencing with instructions to apply Section 403 of the First Step Act. Alternatively, should the Court deny this motion, the government requests an additional 30 days following the Court's denial to file a brief on the merits.

Respectfully submitted,

Chad E. Meacham
United States Attorney

*s/ Amy J. Mitchell*
AMY J. MITCHELL
Assistant United States Attorney
Texas Bar No. 24029734
Oklahoma Bar No. 17674
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8771
Facsimile: (214) 659-8802
amy.mitchell@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF CONFERENCE

On October 4, 2022, I conferred with Vivek Jampala, counsel for Corey Duffey, and Kevin Ross, counsel for Jarvis Ross, and they are not opposed to this motion.

*s/ Amy J. Mitchell*
Amy J. Mitchell

## CERTIFICATE OF SERVICE

I certify that this document was served on the appellants' attorneys, through the Court's ECF system on October 11, 2022, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*s/ Amy J. Mitchell*
Amy J. Mitchell

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4115 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*s/ Amy J. Mitchell*
Amy J. Mitchell